1

WESTON & McELVAIN LLP
Richard C. Weston (State Bar No. 126491)

2

Leo L. Ashley III (State Bar No. 197890)
1960 E. Grand Avenue, Suite 400

3

El Segundo, California 90245
Telephone:   (213) 596-8000

4

Facsimile:   (213) 596-8039
Email:         rweston@wmattorneys.com

5

                  lashley@wmattorneys.com

6

Attorneys for Defendant AMGUARD
INSURANCE COMPANY also erroneously

7

sued as BERKSHIRE HATHAWAY GUARD
INSURANCE COMPANIES

8

9

# UNITED STATES DISTRICT COURT FOR THE

10

## SOUTHERN DISTRICT OF CALIFORNIA

11

SALAM RAZUKI,

Case No. 3:21-cv-01983-AJB (DEB)

12

Plaintiff,

**NOTICE OF DEFENDANT AMGUARD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

13

14

vs.

15

AMGUARD INSURANCE COMPANY; BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES; and DOES 1 THROUGH 10, INCLUSIVE,

16

17

Defendants.

[Filed concurrently with Declarations of Melinda Champluvier and Leo L. Ashley III]

18

19

Hearing

20

21

Date:         February 23, 2023
Time:         2:00 p.m.
Location:   4A

22

23

Action Filed:   October 6, 2021
Trial Date:      Not Set

24

25

26

27

28

-1-

**TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 23, 2023 at 2:00 p.m. in Courtroom 4A of the above-entitled Court located at 221 West Broadway, San Diego, California 92101, Defendant AmGUARD Insurance Company ("AmGUARD") will and hereby does, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Court for summary judgment in its favor and against Plaintiff Salam Razuki ("Plaintiff" or "Razuki").

This Motion is made on the grounds that there is no genuine dispute regarding any material fact and each of Razuki's causes of action fails as a matter of law, because AmGUARD has no duty under insurance policy number SABP126400 issued by AmGUARD to Razuki ("Policy") to pay for loss due to the fire on October 11, 2020 at the multi-tenant commercial building located at 5065-5085 Logan Avenue, San Diego, California 92113-4490 ("Property").  In particular, coverage under the Policy is conditioned upon the maintenance of an operational automatic sprinkler system within the Property, and Razuki failed to satisfy this condition since the Property was not equipped with such a fire suppression system at the time of the subject fire.

**PLEASE TAKE FURTHER NOTICE** that, in the alternative, and only in the event that the Motion for Summary Judgment is denied, AmGUARD will seek partial summary judgment as to the following causes of action and claim for damages alleged by Razuki on the following grounds:

1. AmGUARD is entitled to partial summary judgment as to the breach of contract cause of action, because AmGUARD has no duty under the Policy to pay for loss due to the subject fire at the Property as a result of Plaintiff's failure to comply with the conditions to coverage set forth in the Policy's Protective Safeguards Endorsement ("PSE").

2. AmGUARD is entitled to partial summary judgment as to the declaratory relief cause of action, because AmGUARD has no duty

1  under the Policy to pay for loss due to the subject fire at the Property as

2  a result of Plaintiff's failure to comply with the conditions to coverage

3  set forth in the PSE.

4     3.  AmGUARD is entitled to partial summary judgment as to the cause of

5  action for breach of the implied covenant of good faith and fair dealing,

6  because (a) AmGUARD has no duty under the Policy to pay for loss

7  due to the subject fire at the Property as a result of Plaintiff's failure to

8  comply with the conditions to coverage set forth in the PSE and (b)

9  AmGUARD's denial of coverage based on the failure to comply with

10  the PSE was reasonable.

11     4.  AmGUARD is entitled to partial summary judgment as to the claim for

12  punitive damages, because there is no evidence of oppression, fraud or

13  malice sufficient to support an award of punitive damages under

14  California law.

15  This Motion is based upon this Notice of Motion and Memorandum of Points

16  and Authorities, the Declarations of Melinda Champluvier and Leo L. Ashley III,

17  and all Exhibits attached thereto, the Court's complete file and records in this action,

18  and upon such other matters as the Court may properly consider in ruling on this

19  Motion.

20

21

22  Date: November 7, 2022

         Respectfully submitted,

23           WESTON & McELVAIN LLP

24        By:  **s/ Leo L. Ashley III**

25           Richard C. Weston

26           Leo L. Ashley III

         Attorneys for Defendant

27           AmGUARD INSURANCE COMPANY

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................9

II.     UNDISPUTED MATERIAL FACTS .............................................10

    A.     Razuki's Insurance Application ...........................................10

    B.     The Policy ..............................................................................10

    C.     The Loss .................................................................................12

    D.     AmGUARD's Coverage Investigation ..................................13

        1.     Nonrenewal of Policy ..................................................14

        2.     Denial of Coverage .....................................................14

    E.     This Action .............................................................................14

III.    AMGUARD IS ENTITLED TO JUDGMENT AS
      A MATTER OF LAW ......................................................................16

    A.     Razuki's Breach of Contract Claim Fails As
        A Matter Of Law ....................................................................17

        1.     Razuki's Challenges To The Denial Of
            Coverage Based On The PSE Contradict
            Settled California Law ..................................................20

            (a)     AmGUARD Did Not Waive The
                    PSE By Failing To Inspect The
                    Property Before The Loss ..............................20

            (b)     AmGUARD Did Not Waive The
                    PSE By  Issuing Payment To Razuki ..............20

            (c)     AmGUARD Has No Duty To
                      Refund The Policy Premium ..........................21

            (d)     The Policy Is Not Ambiguous ..........................22

    B.     Razuki's Cause for Bad Faith Fails As A
        Matter of Law ........................................................................23

        1.     There Can Be No Bad Faith Liability
            Because AmGUARD's Coverage
            Determination Was Reasonable ...................................23

        2.     There Is No Cause of Action For Bad
            Faith  Nonrenewal Of The Policy ...............................25

    C.     The Declaratory Relief Cause Of Action Fails
        As A Matter Of Law ..............................................................25

---

     D.     The Punitive Damages Claim Fails As A Matter
          Of Law ............................................................................................26

IV.    CONCLUSION .............................................................................28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Allstate Ins. Co. v. Madan*
  889 F. Supp. 374 (C.D. Cal. 1995) .................................................. 16, 17

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)........................................................................... 17

*Berenato v. Seneca Specialty Ins. Co.*
  240 F. Supp. 3d 351 (E.D. Pennsylvania 2017)...................................... 19

*Calderone v. U.S.*
  799 F.2d 254 (6th Cir. 1986) .............................................................. 16

*Casey v. Metropolitan Life Ins. Co.*
  688 F. Supp. 2d 1086 (E.D. Cal. 2010) .............................................. 27

*Golden Gate Way, LLC v. Enercon Services, Inc.*
  572 F. Supp. 3d 797 (N.D. California 2021) ........................................ 21

*Great Lakes Reinsurance (UK), PLC v. JDCA, LLC*
  2014 WL 6633039 (D. Conn. November 21, 2014) .............................. 19

*Lunsford v. American Guarantee & Liability Ins. Co.*
  18 F.3d 653 (9th Cir. 1994) .............................................................. 27

*Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.*
  566 Fed. Appx 356 (5th Cir. 2014) ..................................................... 19

*SDR Capital Management, Inc. v. American Intern. Specialty Lines Ins. Co.*
  320 F. Supp. 2d 1043 (S.D. Cal. 2004)................................................ 17

*Southern California Gas Co. v. City of Santa Ana*
  336 F.3d 885 (9th Cir. 2003) ............................................................. 17

**STATE CASES**

*Adams v. Allstate Ins. Co.*
  187 F. Supp. 2d 1219 (C.D. Cal. 2002) .............................................. 27

*American Way Cellular, Inc. v. Travelers Property Casualty Company of America*
  216 Cal. App. 4th 1040 (2013) ......................................... 18, 19, 20, 25

*Amtel Corporation v. St. Paul Fire & Marine Insurance Company*
  421 F. Supp. 2d 1265 (N.D. Cal. 2006)................................................ 25

*Aydin Corp. v. First State Insurance Co.*
  18 Cal. 4th 1183 (1998) .................................................................... 17

*California Shoppers, Inc. v. Royal Globe Ins. Co.*
  175 Cal.App.3d 1 (1985) ................................................................... 23

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*
  90 Cal.App.4th 335 (2001) ................................................................. 23, 24

*Delgado v. Heritage Life Ins. Co.*
  157 Cal. App. 3d 262 (1984) ..................................................................... 24

*Dollinger DeAnza Associates v. Chicago Title Ins. Co.*
  199 Cal. App. 4th 1132 (2011) ................................................................. 20

*Foster-Gardner, Inc. v. National Union Fire Ins. Company of Pittsburgh, PA*
  18 Cal.4th 857 (1998) ............................................................................. 22

*Imperial Casualty & Indemnity Company v. Sogomonian*
  198 Cal. App. 3d 169 (1988) ..................................................................... 21

*Kopczynski v. Prudential Ins. Co.*
  164 Cal.App.3d 846 (1985) ........................................................................ 23

*Love v. Fire Ins. Exchange*
  221 Cal.App.3d 1136 (1990) ...................................................................... 23

*Mason v. Mercury Cas. Co.*
  64 Cal. App. 3d 471 (1976) ........................................................................ 27

*Mercury Ins. Co. v. Vanwanseele-Waker*
  41 Cal. App. 4th 1093 (1996) .................................................................... 17

*Mitchell v. United National Insurance Co.*
  127 Cal. App. 4th 457 (2005) .................................................................... 20

*Mock v. Michigan Millers Mut. Ins. Co.*
  4 Cal.App.4th 306 (1992) .......................................................................... 26

*Opsal v. United Services Auto Ass'n*
  2 Cal.App.4th 1197 (1991) ........................................................................ 23

*Orcilla v. Big Sur, Inc.*
  244 Cal. App. 4th 982 (2016) .................................................................... 26

*R&B Auto Center, Inc. v. Farmers Group, Inc.*
  140 Cal. App. 4th 327 (2006) .................................................................... 21

*San Jose Crane & Rigging, Inc. v. Lexington Ins. Co.*
  227 Cal. App. 3d 1314 (1991) .................................................................... 18

*Schimmel v. Norcal Mutual Insurance Company*
  39 Cal. App. 4th 1282 (1995) .................................................................... 25

*Tomaselli v. Transamerica Ins. Co.*
  25 Cal.App.4th 1269 (1994) ...................................................................... 27

*TransparentGov Navato v. City of Navato*
  34 Cal. App. 5th 140 (2019) ...................................................................... 26

*Waller v. Truck Ins. Exchange Inc.*
  11 Cal. 4th 1, 44 Cal.Rptr. 370 (1995) ...................................................... 17

**FEDERAL STATUTES**

Federal Rules of Civil Procedure, Rule 56(a) ...........................................................16

**STATE STATUTES**

California Civil Code, Section 3294.................................................................26, 27

California Insurance Code, Section 332 .....................................................20

California Insurance Code, Section 481(a)...............................................21

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This action arises out of a first party insurance claim involving a fire in October 2020 at the multi-tenant commercial building located at 5065-5085 Logan Avenue, San Diego, California 92113-4490 ("Property").  The fire caused damage to the Property, and Plaintiff Salam Razuki ("Plaintiff" or "Razuki") sought benefits for the loss under an insurance policy issued by Defendant AmGUARD Insurance Company ("AmGUARD") to Razuki.

Razuki filed this suit after AmGUARD denied coverage for the loss.  The operative Amended Complaint alleges causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing ("bad faith") and declaratory relief, stating that AmGUARD "unreasonably delayed payment of benefits and failed and refused to pay required benefits…" due to the Loss.  Razuki seeks compensatory damages and punitive damages.

Razuki, however, cannot prove any of these causes of action or claims for damages.  In particular, the policy includes a Protective Safeguards Endorsement ("PSE") that expressly requires Razuki to "[M]aintain…in complete working order…" and "[A]ctively engage and maintain…at all times…" an automatic sprinkler system.  The PSE also states "[W]e will not pay for loss or damage caused by or resulting from fire, if prior to the fire, you failed to comply with any condition set forth in Paragraph **A**…"  It is undisputed that the Property was not equipped with an automatic sprinkler system at the time of the fire, and as a consequence, the policy does not provide coverage for the loss.

Each of Razuki's claims against AmGUARD necessarily fails because AmGUARD correctly denied coverage for the fire loss.  AmGUARD is entitled to judgment as matter of law, as further detailed below.

/ / /

/ / /

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## II.     UNDISPUTED MATERIAL FACTS

### A.     Razuki's Insurance Application

An insurance application was submitted to AmGUARD on behalf of Razuki for insurance coverage for the premises at 5065-5085 Logan Avenue, San Diego, California 92113 ("Application").  [Declaration of Melinda Champluvier In Support of AmGUARD's Motion for Summary Judgment, Or Alternatively, Partial Summary Judgment ("Champluvier Decl."), ¶4 & Exhibit 1.]  The Application includes information about "Protective Safeguards-Fire", and states "Yes" in response to an inquiry about the presence of "Automatic Sprinkler System (100% of Building)…"  [Champluvier Decl., Exhibit 1.]  The Application states "N/A" in response to an inquiry regarding "[A]utomatic Commercial Cooking Extinguishing System (a/k/a Ansul system)…"  [*Id.*]

### B.     The Policy

Following AmGUARD's receipt of the Application, AmGUARD issued businessowners' policy no. SABP126400 to Plaintiff Salam Razuki for the period of February 15, 2020 to February 15, 2021 ("Policy").  [Champluvier Decl., ¶5 & Exhibit 2 at page 14.]  The Policy provides coverage in relation to a multi-tenant commercial building located at 5065-5085 Logan Avenue, San Diego, California 92113-4490 ("Property").  [Champluvier Decl., Exhibit 2 at page 15.]

Also included in the Policy is a Protective Safeguard Endorsement ("PSE"). [Champluvier Decl., Exhibit 2 at pages 12, 56-57.]  The PSE states as follows in pertinent part:

**PROTECTIVE SAFEGUARDS – FIRE**

\*     \*     \*

**SCHEDULE**

| Prem. No. | Bld. No. | Protective Safeguards Symbols Applicable |
|-----------|----------|------------------------------------------|
| 001 | 001 | P-1 |

\*     \*     \*

**A.**   The following is added to the **Property**
**General Conditions** in **SECTION I –**
**PROPERTY:**
**Protective Safeguards**
As a condition of this insurance, you are required
to:
**1.** Maintain the protective safeguards listed in
the Schedule, and over which you have control,
in complete working order;
**2.** Actively engage and maintain in the "on"
position and for "P-2" Automatic Fire
Alarms also maintain the connection to a
central station or public or private fire
alarm station at all times any automatic fire
alarm or other automatic system listed in
the Schedule…

*   *   *

**B.**   The following is added to Paragraph **B.**
**Exclusions** in **SECTION I – PROPERTY**:
We will not pay for loss or damage caused
by or resulting from fire if, prior to the fire,
you failed to comply with any condition
set forth in Paragraph **A.**

**C.**   The protective safeguards to which this
endorsement applies are identified by the
symbols set forth below:  The term
"Automatic" as used herein means that
the device in the "on position" is activated

by fire or smoke without the need for any further

action by you.

**"P-1" Automatic Sprinkler System,** including

related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or

extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and

supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire

protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

\*    \*    \*

**"P-9G" Automatic Commercial Cooking**

**Extinguishing System (a/k/a Ansul system)** consisting

of wet chemical extinguishing equipment.

[Champluvier Decl., Exhibit 2 at pages 56-57.]

## C.    <u>The Loss</u>

A fire occurred at the Property on or about October 11, 2020 ("Loss").

[Champluvier Decl., ¶3 & Exhibit 8.]  The fire began in a restaurant within the

Property, due to failed electrical wiring in a junction box located in a wall cavity

near the attic.  [Champluvier Decl., Exhibit 8 at page 160.]  The restaurant included

a cooking/Ansul fire protection system at the time of the Loss.[1]  [Champluvier Decl., ¶10.]  The fire did not originate over a cooking surface.  [Champluvier Decl., Exhibit 8 at page 160.]  Instead, it originated at an electrical junction box that was not under the Ansul system.  [*Id*.]  Neither the building generally, nor the restaurant where the fire originated had a fire suppressing automatic sprinkler system. [Champluvier Decl., ¶10 & Exhibit 6 at page 140.]

### D.   AmGUARD's Coverage Investigation

AmGUARD was notified of the Loss by or on behalf of Plaintiff the day after the fire.  [Champluvier Decl., ¶6 & Exhibit 3.]  Claims Professional Sonia Pervez ("Pervez") was assigned to investigate Policy coverage for the Loss on behalf of AmGUARD.  [Champluvier Decl., ¶6.]  On October 15, 2020, Pervez communicated with Razuki who reported the fire began in a restaurant and damage to the Property was extensive.  [Champluvier Decl., ¶7 & Exhibit 4 at page 134.] Pervez and Razuki discussed the Policy, involvement of an independent adjuster who would assist AmGUARD in the coverage investigation and Razuki agreed to forward invoices for board-up expenses.   [*Id*.]

On or about October 28, 2020, Pervez also engaged independent adjusting firm Engle Martin & Associates ("Engle Martin") to assist in AmGUARD's coverage investigation.   [Champluvier Decl., ¶8 & Exhibit 5.]  Also on October 28th AmGUARD issued a check totaling $50,000 to Plaintiff.  [Champluvier Decl., ¶9 & Exhibit 4 at page 133.]  The funds were sent as an advance for damage to the Property due to the Loss, pending AmGUARD's further investigation of coverage for the claim.  [Champluvier Decl., ¶9.]

On October 30, 2020, Steven Kenyon of Engle Martin physically inspected the Property, along with Razuki's property manager Shaun Chamberlin

---

[1] An Ansul system is a fire suppression system mounted above a cooking surface, which drops chemical fire suppressants on fires, e.g., grease fires, that may start on the cooking surface.

("Chamberlin").  [Champluvier Decl., ¶10 & Exhibit 6.]   Kenyon received documents and information related to the Property in conjunction with the inspection, including lease agreements for three of five units within the Property impacted by the fire as well as repair cost estimates for damage to the Property due to the Loss.  [Champluvier Decl., ¶11 & Exhibit 6.]  Among other things, Engle Martin's inspection also revealed, and Chamberlin confirmed, there was no automatic fire suppression system in the building other than the cooking/Ansul system serving the restaurant.  [Champluvier Decl., ¶10 & Exhibit 6 at page 140.]

### 1.   Nonrenewal of Policy

AmGUARD sent a "NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION" to Razuki on December 4, 2020.  [Champluvier Decl., ¶12 & Exhibit 9.]  The notice advised Razuki that the Policy would not be renewed and would expire on the termination date set forth in the Policy, February 15, 2021. [*Id.*]

### 2.   Denial of Coverage

On March 3, 2021, Pervez sent a letter to Plaintiff denying Policy coverage for the Loss.  [Champluvier Decl., ¶13 & Exhibit 10.]  The denial of coverage was based on Plaintiff's failure to satisfy the PSE due to the absence of an operational automatic sprinkler system within the Property at the time of the fire.  [*Id.*]

### E.   This Action

Plaintiff commenced this action against AmGUARD on October 6, 2021. Plaintiff claims in the operative Amended Complaint that AmGUARD "unreasonably delayed payment of benefits and failed and refused to pay required benefits…" due to the Loss.  [Amended Complaint, ¶36.]  It is further alleged that "Amguard acted with malice…", and "[B]y failing to pay the monies it owes to Plaintiff pursuant to the Policy, Amguard engaged in conduct intended by Amguard to cause injury to Plaintiff, and/or engaged in despicable conduct which was carried

on by Amguard with a willful or conscious disregard of the rights or safety of Plaintiff."   [Amended Complaint, ¶54.]

Razuki alleges causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing ("bad faith") and declaratory relief.[2]   Razuki seeks a declaration that he "is entitled to benefits pursuant to the Policy that Amguard should be ordered to pay…", damages according to proof and punitive damages.  [Amended Complaint, ¶61 & prayer for relief.]

Razuki alleges the following facts in support of the claims for breach of contract, bad faith and/or declaratory relief:

AmGuard paid $50,000 on October 29, 2020 as an initial payment in recognition of its insurance obligations.  AmGuard denied the claim on March 3, 2021, nearly 5 months after the fire, after failing and refusing to respond to repeated inquiries by Plaintiff and those acting on his behalf…The Property had an automatic sprinkler system.  Any ambiguity in the definition of "Automatic Sprinkler System" in the Policy is held against AmGuard.  An insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts giving rise to the defense.  AmGuard has waived any sprinkler exclusion defense by failing to inspect the Property, and by paying $50,000 for damages from the fire.  AmGuard has also waived any sprinkler exclusion defense by failing to refund the premium for this fire that occurred on October 11, 2020, although the Policy did not expire until February 15, 2021.  AmGuard certainly knew of the sprinkler issue as of October 11, 2020,

---

[2] Razuki's Amended Complaint also includes causes of action for fraud and violation of California Business and Professions Code section 17200, but those causes of action were dismissed by order dated April 20, 2022 following a motion to dismiss by AmGUARD.  [See Dkt. No. 17.]

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

and continued to insure the Property just as it had before.  The fire's origin was in the attic space.  That is above any automatic sprinkler system, and therefore would not have prevented the fire.  The alleged breach of an insurance policy by an insured must materially affect the loss of hazard insured.  That wasn't the case in this situation…AmGuard had a duty not to cancel the Policy in retaliation against Plaintiff. AmGuard filed to provide the specific items of information that allegedly support the reason for the alleged cancellation and the identity and source of that information, and copies of the documents relating to the alleged cancellation.  AmGuard failed to deal fairly and in good faith with Plaintiff by representing to Plaintiff that the Policy is cancelled and/or by cancelling the Policy.

[Declaration of Leo L. Ashley III In Support of AmGUARD's Motion for Summary Judgment, Or Alternatively, Partial Summary Judgment, Exhibit 11 at pages 5-6 (Interrogatory Nos. 1, 4 & 7) & Exhibit 12 at pages 14-15, 17-18 & 20-22 (Responses to Interrogatory Nos. 1, 4 & 7).]

## III.   <u>AMGUARD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW</u>

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  [FRCP, Rule 56(a).]  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.*

When the moving party has the burden, such as a defendant seeking summary judgment based on an affirmative defense, the party's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  *Calderone v. U.S.,* 799 F.2d 254, 259 (6th Cir. 1986).  The party's burden must be satisfied by affirmative admissible evidence.  See *Allstate Ins. Co. v. Madan,* 889 F. Supp. 374, 378 (C.D. Cal. 1995).  By contrast, when the non-moving party

bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  *Id.*

Only disputes over facts that might affect the outcome of the suit under the governing law preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Factual disputes that are irrelevant or unnecessary to the outcome will not be counted.  *Id.*

Summary judgment motions touching upon contract interpretation, in particular, may be granted when the contract is unambiguous.  *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

Because this is a diversity action, the court must apply state law in interpreting an insurance policy.  *SDR Capital Management, Inc. v. American Intern. Specialty Lines Ins. Co.,* 320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004).  Accordingly, the interpretation of an insurance policy presents a question of law for this court to decide.  *Waller v. Truck Ins. Exchange Inc.,* 11 Cal. 4th 1, 18 (1995).  The insured has the burden to bring the claim within the basic scope of coverage; once the insured makes this showing, the burden is on the insurer to prove the claim is specifically excluded.  See *Aydin Corp. v. First State Insurance Co.,* 18 Cal. 4th 1183, 1188 (1998).

As further discussed below, Razuki cannot meet his burden to bring the claim for Policy benefits within the basic scope of coverage because the Property was not equipped with an automatic sprinkler system at the time of the Loss as expressly required by the PSE.  AmGUARD correctly denied coverage for the Loss and each of Razuki's claims for relief necessarily fails as a result, entitling AmGUARD to summary judgment.

**A.     Razuki's Breach of Contract Claim Fails As A Matter Of Law**

The terms of the insurance policy at issue govern the rights of the parties to an insurance dispute.  *Mercury Ins. Co. v. Vanwanseele-Waker*, 41 Cal. App. 4th 1093, 1100 (1996).  "In first party property cases, the right to coverage comes from the

terms of the contract, i.e., it turns on determining causation of a loss and identifying whether it is covered or excluded."  *San Jose Crane & Rigging, Inc. v. Lexington Ins. Co.*, 227 Cal. App. 3d 1314, 1319 (1991).

Here, the PSE expressly requires Plaintiff to "[M]aintain…in complete working order…" and "[A]ctively engage and maintain…at all times…" an automatic sprinkler system, and provides "[W]e will not pay for loss or damage caused by or resulting from fire, if prior to the fire, you failed to comply with any condition set forth in Paragraph **A**…"  It is settled that such policy language creates a condition precedent to coverage, namely the requirement of automatic sprinklers. *American Way Cellular, Inc. v. Travelers Property Casualty Company of America,* 216 Cal. App. 4th 1040, 1054 (2013).

Thus, when an insured building is not equipped with automatic sprinklers at the time of fire and the policy covering the building contains a protective safeguards endorsement stating "[A]s a condition of this insurance, you are required to maintain the protective devices or services listed…" including an "[A]utomatic Sprinkler System" and "[W]e will not pay for loss or damage caused by or resulting from fire, if prior to the fire, you…[F]ailed to maintain any protective safeguard listed…", there is no policy coverage for the loss because the insured failed to maintain a sprinkler system under the terms of the endorsement.  *Id.* at 1055.

This is precisely what happened here.  There is no dispute that the PSE conditioned coverage on Plaintiff's maintenance of an automatic sprinkler system. Nor is there any dispute that the Property was not equipped with such a sprinkler system at the time of the Loss.  AmGUARD properly denied Policy coverage for the Loss, and did not breach the Policy, because Plaintiff failed to comply with the condition to coverage set forth in the PSE.

As well, the terms of the Policy do not condition application of the PSE on whether the automatic sprinkler system, had it been installed, would have prevented the fire.  Nor do courts that have interpreted similar protective safeguard

endorsements.  See *American Way Cellular, Inc. v. Travelers Property Casualty Company of America, supra,* 216 Cal. App. 4th at 1055; *Berenato v. Seneca Specialty Ins. Co.,* 240 F. Supp. 3d 351, 356-357 (E.D. Pennsylvania 2017) (applying Pennsylvania law) (protective safeguard endorsement is unambiguous because it states insurer "will not pay for loss or damage caused by or resulting from fire" in the event plaintiff "failed to maintain any protective safeguard…over which [he] had control in complete working order…" and plaintiff violated this requirement when he turned the sprinkler system off; in cases where a policy holder either did not have a working sprinkler system in place or turned off the system, courts have found that similar protective safeguard endorsements bar coverage); *Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.,* 566 Fed. Appx 356, 359-360 (5th Cir. 2014) (applying Louisiana law) (affirming district court's grant of summary judgment in favor of insurer where policy includes protective safeguards endorsement providing "[W]e will not pay for loss or damage caused by or resulting from fire, if prior to the fire, you…[F]ailed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order…" where insured conceded fire suppression system did not work on day of fire); *Great Lakes Reinsurance (UK), PLC v. JDCA, LLC,* 2014 WL 6633039 *11 (D. Conn. November 21, 2014) (applying Connecticut law) (protective safeguards endorsement requiring presence of automatic sprinkler system was unambiguous and created condition precedent to recovery under policy).

Thus, Razuki's claim that the PSE does not apply because the fire originated in the attic finds no support in the Policy or California law.  It is enough that the Policy required Razuki to maintain an automatic sprinkler system and Razuki failed to satisfy that contractual condition.[3]

---

[3] Moreover, Razuki offers only speculation and no facts or expert testimony indicating an automatic sprinkler system would not have eliminated or reduced the fire damage to the Property, had such a system been installed at the time of the Loss.

1.   **Razuki's Challenges To The Denial Of Coverage Based On The PSE Contradict Settled California Law**

Razuki claims the PSE does not apply to eliminate coverage for the Loss for several other reasons. Absolutely none of these contentions is correct, as further discussed below.

(a)   **AmGUARD Did Not Waive The PSE By Failing To Inspect The Property Before The Loss**

For instance, Razuki contends AmGUARD waived the PSE defense by failing to inspect the Property prior to the Loss since such an inspection would have disclosed the absence of an automatic sprinkler system from the premises. This exact argument was rejected by the *American Way Cellular, Inc.* court, because an insurer does not have a duty to investigate the insured's statements in an insurance application or verify the accuracy of the representations. *American Way Cellular, Inc. v. Travelers Property Casualty Company of America, supra,* 216 Cal. App. 4th at 1050-1051. Instead, it is the insured's duty to divulge fully all he or she knows. *Id.* at 1051; see also *Mitchell v. United National Insurance Co.,* 127 Cal. App. 4th 457, 476 (2005); Cal. Insurance Code §332 (each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining). Consequently, AmGUARD was not obligated to inspect the Property before the Loss and did not waive the Policy's PSE condition by failing to conduct such an inspection.

(b)   **AmGUARD Did Not Waive The PSE By Issuing Payment To Razuki**

Further, the rule is well established that the doctrine of implied waiver, based on the conduct or action of an insurer is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. *Dollinger DeAnza Associates v. Chicago Title Ins. Co.,* 199 Cal. App. 4th 1132,

1154 (2011); *R&B Auto Center, Inc. v. Farmers Group, Inc.,* 140 Cal. App. 4th 327, 352 (2006).  Accordingly, since there is no Policy coverage for the Loss due to Razuki's failure to comply with the PSE, AmGUARD did not waive the PSE condition by issuing the $50,000 advance to Razuki after the Loss and before AmGUARD's coverage investigation revealed the Property did not include an automatic sprinkler system at the time of the Loss.[4]

Moreover, the doctrine of waiver refers to the intentional relinquishment of a known right after full knowledge of the facts and depends upon the intention of one party only.  *Golden Gate Way, LLC v. Enercon Services, Inc.,* 572 F. Supp. 3d 797, 830 (N.D. California 2021) (applying California law).  This is a difficult standard to meet because waiver always rests upon intent, and the burden is on the party claiming a waiver to prove it by clear and convincing evidence that does not leave the matter to speculation.  *Id.*  Razuki certainly cannot meet this high standard. The $50,000 advance was made by AmGUARD without knowledge of all facts, namely the facts that Razuki's insurance application included a material misrepresentation regarding the fire protection system serving the Property and the premises was not equipped with an operational automatic sprinkler system when the Loss occurred.

**(c)    AmGUARD Has No Duty To Refund The Policy Premium**

Razuki also alleges AmGUARD waived the PSE by failing to refund the Policy premium following the Loss.  Such a return of premium, however, is only required if a policy is cancelled, rejected, surrendered or rescinded.  See Cal. Insurance Code §481(a); *Imperial Casualty & Indemnity Company v. Sogomonian,* 198 Cal. App. 3d 169, 184 (1988) (a contract is extinguished by rescission; the consequence of rescission is not only the termination of further liability but also the

---

[4] If anything, AmGUARD's determination to make an advance before completing its investigation is indicative of its good faith in adjusting the claim.

1   restoration of the parties to their former positions by requiring each to return

2   whatever consideration has been received).

3          Of course, AmGUARD only denied coverage for the Loss because Razuki

4   failed to comply with the PSE.  Since the Policy has not been cancelled, rejected,

5   surrendered or rescinded, AmGUARD has no duty to return any portion of the

6   premium paid for the Policy.

7                          **(d)      The Policy Is Not Ambiguous**

8          While Razuki claims the Property did in fact have an automatic sprinkler

9   system, and the Policy is ambiguous as to the meaning of automatic sprinkler

10  system, this contention too is devoid of merit.  Indeed, a policy provision will be

11  considered ambiguous when it is capable of two or more constructions, both of

12  which are reasonable.  *Foster-Gardner, Inc. v. National Union Fire Ins. Company of*

13  *Pittsburgh, PA,* 18 Cal.4th 857, 868 (1998).  Language in a contract must be

14  construed in the context of that instrument as a whole, and in the circumstances of

15  that case, and cannot be found to be ambiguous in the abstract.  *Id.*  If an asserted

16  ambiguity is not eliminated by the language and context of the policy, courts then

17  invoke the principle that ambiguities are generally construed against the party who

18  caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's

19  reasonable expectations of coverage.  *Id.*

20         Here, the Property contained an Ansul cooking extinguishing system at the

21  time of the Loss.  This did not create an ambiguity because that type of system is

22  specifically identified as one of the potential protective safeguards in the PSE (i.e.,

23  "P-9G"), and the PSE does not require Razuki to maintain such an Ansul system.

24  Instead, the PSE requires Razuki to maintain an "Automatic Sprinkler System" (i.e.,

25  "P-1") which is not defined to include an Ansul system.  Since the language of the

26  Policy is clear that an "Automatic Sprinkler System" and Ansul cooking

27  extinguishing system are distinct protective safeguards, Razuki did not have any

28  reasonable expectation that maintenance of an Ansul system satisfied the condition

1  imposed by the PSE.  Razuki's complaints about ambiguous Policy language should

2  fall on deaf ears as a consequence.

3      **B.     Razuki's Cause for Bad Faith Fails As A Matter of Law**

4      It is well established that an insured must demonstrate breach of contract

5  before it can recover for bad faith.  *See Love v. Fire Ins. Exchange*, 221 Cal. App.

6  3d 1136, 1153 (1990); *Kopczynski v. Prudential Ins. Co.,* 164 Cal. App. 3d 846, 849

7  (1985).  Plaintiff's bad faith claim necessarily fails because no coverage is owed

8  under the Policy.

9          **1.     There Can Be No Bad Faith Liability Because AmGUARD's**

10              **Coverage Determination Was Reasonable**

11     A breach of the implied covenant of good faith and fair dealing involves

12  something beyond breach of the contractual duty itself.  *Chateau Chamberay*

13  *Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001)

14  (quotation omitted).  The mere denial of policy benefits does not demonstrate bad

15  faith; bad faith implies unfair dealing rather than mistaken judgment.  *California*

16  *Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal. App. 3d 1, 15, 54-55 (1985).

17  Indeed, the ultimate test of bad faith liability in a first-party case is whether the

18  refusal to pay benefits was unreasonable under the circumstances; before an insurer

19  can be found to have acted tortiously, i.e., in bad faith in refusing to bestow policy

20  benefits, it must have done so without proper cause.  *Opsal v. United Services Auto*

21  *Ass'n,* 2 Cal. App. 4th 1197, 1205 (1991).

22     Further, in the context of first party property claims, it is settled that: "The

23  mistaken [or erroneous] withholding of policy benefits, if reasonable or if based on

24  a legitimate dispute as to the insurer's liability under California law does not expose

25  the insurer to bad faith liability."  *Chateau*, *supra*, 90 Cal. App. 4th at 346

26  (quotations omitted).

27     Importantly, this Court is *not* required to determine whether AmGUARD's

28  denial of coverage for the Loss based on the failure to comply with the PSE was

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   correct in order to issue summary judgment in AmGUARD's favor as to the bad

2   faith claim. As stated in *Chateau*:

3       …the issue of bad faith may, in specific instances, be treated as an

4       issue of law. [Citation.]…Given the record we have before us, we find

5       that this case falls within the ambit of the foregoing principles. We are

6       not called upon to determine whether AIIC's view as to the proper

7       outcome of the adjustment process was correct. It is only necessary for

8       us to determine that, *in light of the record as a whole,* its position with

9       respect to the disputed points was *reasonable* or that AIIC had *proper*

10      *cause* to assert the positions that it did.

11  90 Cal. App. 4th at 350.

12      Here, there is no dispute that the Property was not equipped with an

13  automatic sprinkler system at the time of the Loss.  Even if the Court determines

14  AmGUARD erroneously denied Policy coverage for the Loss, it was certainly

15  reasonable to deny coverage based on the terms of the PSE which expressly

16  condition coverage for loss by fire on the maintenance of an operational automatic

17  sprinkler system.  See *Delgado v. Heritage Life Ins. Co.,* 157 Cal. App. 3d 262, 277

18  (1984) (insurer's interpretation of policy that is not inherently unreasonable is not

19  conclusive evidence of bad faith).

20      Accordingly, if summary judgment is denied, AmGUARD should at least

21  have partial summary judgment as to the bad faith claim since AmGUARD only

22  acted reasonably and with proper cause, considering the Policy language and

23  automatic sprinkler system missing from the Property, in determining coverage for

24  the Loss is precluded due to the failure to comply with the PSE.

25

26

27

28

2.   **There Is No Cause of Action For Bad Faith Nonrenewal Of The Policy**

Razuki also alleges AmGUARD acted in bad faith by representing to Razuki that the Policy was cancelled or cancelling the Policy.  This contention is wrong for at least two reasons.

First, AmGUARD did not cancel the Policy before the Policy term expired or threaten to do so.  Rather, AmGUARD did not renew the Policy after it went out of force on February 15, 2021.

Secondly, except as limited by statute in connection with automobile and homeowners insurance, an insurer has no legal duty to renew an insurance policy after expiration of its term and refusing to renew does not breach the insurer's implied covenant of good faith and fair dealing.  *Amtel Corporation v. St. Paul Fire & Marine Insurance Company,* 421 F. Supp. 2d 1265, 1268 (N.D. Cal. 2006) (applying California law); *Schimmel v. Norcal Mutual Insurance Company,* 39 Cal. App. 4th 1282, 1285 (1995) (in the absence of statutory provisions to the contrary, an insurer may refuse to renew a term policy for any reason or no reason at all).

Because the Policy was in effect for a specified term that began on February 15, 2020 and ended on February 15, 2021, AmGUARD was not obligated to renew the coverage and cannot be held liable for bad faith due to its refusal to renew the Policy as a matter of law.  Razuki's cause of action for breach of the implied covenant of good faith and fair dealing necessarily fails for these additional reasons.

C.   **The Declaratory Relief Cause Of Action Fails As A Matter Of Law**

Plaintiff's declaratory relief cause of action seeks a declaration that the Policy provides coverage for the Loss.  Razuki cannot prove that cause of action in view of his failure to comply with the PSE, which eliminated any Policy duty by AmGUARD to pay for the Loss.  See *American Way Cellular, Inc. v. Travelers Property Casualty Company of America,* supra, 216 Cal. App. 4th at 1055-1058 (affirming trial court's grant of summary judgment as to insured's declaratory relief

1   cause of action against insurer where insured failed to comply with policy's

2   protective safeguards endorsement).

3         Moreover, declaratory relief operates prospectively to declare future rights,

4   rather than to address past wrongs, thus setting controversies at rest before they lead

5   to repudiation of obligations, invasion of rights or commission of wrongs; the

6   remedy is to be used in the interests of preventive justice, to declare rights rather

7   than execute them. *TransparentGov Navato v. City of Navato,* 34 Cal. App. 5th 140,

8   148 (2019).  Declaratory relief is not available to Razuki as a matter of law because

9   he seeks a remedy for an alleged past wrong, AmGUARD's denial of coverage for

10  the Loss, rather preventive justice involving future rights between the parties. *See*

11  *Orcilla v. Big Sur, Inc.,* 244 Cal. App. 4th 982, 1014 (2016) (plaintiffs failed to state

12  cause of action for declaratory relief where they sought remedy for past wrong, a

13  prior foreclosure sale, and there were no allegations of an actual, present controversy

14  between the parties).

15        **D.      The Punitive Damages Claim Fails As A Matter Of Law**

16        Even if the Court does not grant summary judgment or partial summary

17  judgment as to the claims for declaratory relief, breach of contract and/or bad faith,

18  it should do so with respect to the punitive damages claim.  Notably, in order to

19  recover punitive damages, a plaintiff must establish by *clear and convincing*

20  evidence that the defendant "has been guilty of oppression, fraud, or malice."

21  [California Civil Code § 3294 (emphasis added).]  Malice and oppression, as

22  defined by California Civil Code section 3294, require an intent to cause injury or

23  "despicable conduct."  Fraud requires an intentional misrepresentation, deceit, or

24  concealment.  "Despicable conduct" is defined as conduct that "is so vile, base,

25  contemptible, miserable, wretched or loathsome that it would be looked down upon

26  and despised by ordinary decent people."  *Mock v. Michigan Millers Mut. Ins. Co.*, 4

27  Cal. App. 4th 306, 331 (1992).  Such conduct has been described as "[having] the

28

1    character of outrage frequently associated with a crime." *Tomaselli v. Transamerica*

2    *Ins. Co.,* 25 Cal. App. 4th 1269, 1287 (1994) (citation omitted).

3        In determining the appropriateness of punitive damages, courts must take into

4    account the heightened "clear and convincing evidence" standard imposed by

5    California Civil Code section 3294.  In other words, both the evidentiary standard

6    as well as the requisite level of misconduct required to warrant punitive damages

7    are much higher than those required for bad faith.  *See Lunsford v. American*

8    *Guarantee & Liability Ins. Co.,* 18 F.3d 653, 656 (9th Cir. 1994) (summarily

9    disposing of punitive damages claim where bad faith claim rejected as a matter of

10   law); *Casey v. Metropolitan Life Ins. Co.,* 688 F. Supp. 2d 1086, 1101 (E.D. Cal.

11   2010) ("Clear and convincing evidence has to be 'so clear as to leave no substantial

12   doubt [and] sufficiently strong to command the unhesitating assent of every

13   reasonable mind.'") (citation omitted). This higher clear and convincing evidentiary

14   standard applies at every stage of the litigation process, including summary

15   adjudication.  *Adams v. Allstate Ins. Co.,* 187 F. Supp. 2d 1219, 1231 (C.D. Cal.

16   2002).

17       As discussed above, AmGUARD's denial of Policy coverage based on the

18   PSE was correct because the Property was not equipped with an operational

19   automatic sprinkler system at the time of the Loss, as required by the PSE.  At the

20   very least, the decision to deny coverage for the Loss was made in good faith, as

21   revealed by the court decisions discussed herein that support AmGUARD's

22   interpretation of the PSE.  There can be no finding of punitive damages since

23   AmGUARD's interpretation of the Policy was reasonable and made in good faith.

24   See *Mason v. Mercury Cas. Co.,* 64 Cal. App. 3d 471, 475 (1976) (a finding of

25   malice cannot be predicated on the mere fact of a divergent interpretation of an

26   insurance contract as long as the insurer's interpretation was rendered in good

27   faith).

28

The evidentiary record is thus devoid of evidence of fraudulent, malicious or oppressive conduct by AmGUARD that could possibly support a claim for punitive damages, and certainly no clear and convincing evidence of such conduct.  While the Court should grant summary judgment in favor of AmGUARD as to all of Razuki's claims, there is no question that AmGUARD is at least entitled to partial summary judgment with respect to the punitive damages claim.

## IV.   CONCLUSION

In view of the foregoing, AmGUARD respectfully asks this Court to grant summary judgment in its favor, or alternatively, partial summary judgment as to Razuki's claims as requested in the Notice of Motion.

Dated:  November 7, 2022

Respectfully submitted,
WESTON & McELVAIN LLP

By:   **s/ Leo L. Ashley III**

Richard C. Weston
Leo L. Ashley III
Attorneys for Defendant
AMGUARD INSURANCE
COMPANY also erroneously
sued as BERKSHIRE HATHAWAY
GUARD INSURANCE
COMPANIES

*Salam Razuki v. AmGUARD Insurance Company, et al.*
USDC-CASD, Case No. 3:21-cv-01983-AJB-DEB

# PROOF OF SERVICE

I, Regina Macleod, declare:

 I am employed in the County of Los Angeles, state of California.  I am over the age of 18 and not a party to the within action; my business address is 1960 East Grand Avenue, Suite 400, El Segundo, California 90245.

 On November 7, 2022, I served a copy of the following document:

**NOTICE OF DEFENDANT AMGUARD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

 By electronically filing the foregoing document with the Clerk of the United States District Court, Southern District of California, using its ECF system, which electronically notifies the persons on the attached service list at the email addresses registered with the ECF System.

 I declare under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

 I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

 Executed on November 7, 2022 at Hawthorne, California.

Regina Macleod

*Salam Razuki v. AmGUARD Insurance Company, et al.*
USDC-CASD, Case No. 3:21-cv-01983-AJB-DEB

## SERVICE LIST

| | |
|---|---|
| Douglas Jaffe | *Attorney for Plaintiff* |
| **LAW OFFICES OF DOUGLAS JAFFE** | Salam Razuki |
| 501 West Broadway, Suite 800 | |
| San Diego, California 92101 | |
| Telephone:   (619) 400-4945 | |
| Facsimile:    (619) 400-4810 | |
| E-mail:        dougjaffelaw@gmail.com | |

2