UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALAM RAZUKI,<br><br>                                Plaintiff,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY;<br>BERKSHIRE HATHAWAY GUARD<br>INSURANCE COMPANIES; and DOES<br>1 through 10, inclusive.<br>                                Defendants. | Case No.: 21-cv-01983-AJB-DEB<br><br>**ORDER GRANTING DEFENDANT AMGUARD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE**<br><br>**(Doc. No. 43)** |

Before the Court is Defendant AmGUARD Insurance Company's ("AmGUARD" or "Defendant") motion for summary judgment on Plaintiff Salam Razuki's ("Plaintiff") First Amended Complaint. (Doc. No. 43.) Plaintiff filed an opposition, to which Defendant replied.[1] (Doc. Nos. 50, 51.) For the reasons set forth below, the Court **GRANTS** Defendant's motion.

I. **BACKGROUND**

Defendant issued an insurance policy to Plaintiff, effective from February 15, 2020 to February 15, 2021, providing coverage to a multi-tenant commercial building

---

[1] In its reply brief, Defendant requests the Court strike Plaintiff's opposition as untimely. The Court has already ruled that based on Plaintiff's counsel's represented medical condition, there was good cause to accept the filing. (Doc. No. 52.)

("Property"). (Doc. No. 43-1 at 13, 14.) On October 11, 2020, a fire occurred at the Property ("the Loss"). (*Id.* at 132.) Plaintiff notified Defendant of the Loss and sought Policy coverage of the damage to the Property. (*Id.*)

Thereafter, one of Defendant's claims professionals communicated with Plaintiff and informed him that an independent adjuster would assist Defendant in the coverage investigation, and issued Plaintiff a $50,000 check as an advance for the damage to the Property. (*Id.* at 134, 135, 137.) After the investigation, Defendant denied Plaintiff's coverage request pursuant to the Policy's Protective Safeguard Endorsement ("PSE"). (*Id.* at 168.) The PSE contained a condition, requiring Plaintiff to maintain the protective safeguard listed in the Schedule as "P-1." Under the PSE, P-1 is defined, in relevant part, as:

> **"P-1" Automatic Sprinkler System**, including related supervisory services.
> Automatic Sprinkler System means:
>     a. Any automatic fire protective or extinguishing system, including
>        connected:
>           (1) Sprinklers and discharge nozzles;
>           (2) Ducts, pipes, valves and fittings;
>           (3) Tanks, their component parts and supports; and
>           (4) Pumps and private fire protection mains.

(*Id.* at 57 (emphasis in original).)

Plaintiff filed suit against Defendant in San Diego Superior Court, and Defendant removed the case to federal court. (Doc. No. 1.) The First Amended Complaint is the operative complaint. (Doc. No. 10.) In it, Plaintiff raises claims for: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) declaratory relief, (4) fraud, and (5) violation of California Business and Professions Code Section 17200 ("UCL claim"). (*Id.*) In a prior order, the Court dismissed Plaintiff's fraud and UCL claims.[2] Defendant's motion for summary judgment on the remaining claims follows.

---

[2] The Court afforded Plaintiff time to amend his fraud and UCL claims, but he did not do so. (Doc. No. 17 at 6.) Those claims are therefore abandoned and remain dismissed without prejudice.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," to show that a genuine issue of disputed fact remains. *Id.* at 324. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## III. DISCUSSION

Defendant seeks summary judgment, arguing that Plaintiff cannot prove his remaining claims for breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory relief based on an alleged wrongful denial of coverage. Defendant contends that it correctly denied Plaintiff's request for coverage because the Property was not equipped with an automatic sprinkler system at the time of the Loss as expressly required by the PSE. Plaintiff asserts that Defendant should be precluded from arguing the PSE exclusion based on waiver and estoppel, and even if it is not, the meaning of "automatic sprinkler system" is ambiguous, and the ambiguity should be resolved in his favor.

---

[3] Internal quotations, citations, and alterations are omitted from the cases cited in this Order unless otherwise indicated.

### A. Evidentiary Objections

To begin, the Court addresses Plaintiff's evidentiary objections to Melinda Champluvier's ("Champluvier") declaration filed in support of Defendant's summary judgment motion. Plaintiff raises a blanket objection to all 13 paragraphs in Champluvier's declaration based on "[l]ack of foundation; vague; ambiguous; overbroad; lack of personal knowledge; hearsay, and material cited cannot be presented in a form that would be admissible in evidence."[4] (Doc. No. 50 at 18–20.) The only argument Plaintiff provides in support of his broad objection is that Champluvier is not qualified to testify about AmGUARD's documents because she "has no personal knowledge regarding the actions and omissions of AmGUARD in this matter, and no personal knowledge regarding how AmGUARD's records are made and maintained." (*Id.* at 7.) Plaintiff offers no explanation for the rest of his objections. Thus, the Court overrules them as inadequately supported. *See generally Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) (declining to comb through documents to identify potential evidentiary issues "all without guidance from the parties."); 10B Fed. Prac. & Proc. Civ. § 2738, Affidavits in Support of or in Opposition to Summary Judgment (4th ed.) ("[A] motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection. A motion asserting only a general challenge to an affidavit will be ineffective.")

As to Plaintiff's lack of personal knowledge objection, the Court overrules it as well. Champluvier's declaration makes clear that in her capacity as a Property Claims Manager for Defendant, she is familiar with AmGUARD's investigation of Plaintiff's insurance claim concerning the fire at the Property, and has access to the Policy issued to Plaintiff, notices issued to Plaintiff in relation to the Policy, and claim file materials concerning Plaintiff's request for coverage. (Doc. No. 43-1 at 2–3.) Champluvier also states that the

---

[4] To the extent Plaintiff objects to Champluvier's declaration based on credibility, the argument is unavailing. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.

company records described in her declaration "were prepared in the regular course of business at or near the time of the acts, conditions or events recorded." (*Id.* at 3.)

Based on the foregoing, the Court finds that Champluvier has sufficient personal knowledge grounded in her own observations and experience as a Property Claim Manager to testify about the company records referenced in her declaration.[5] *See United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) ("Personal knowledge includes opinions and inferences grounded in observations and experience."). And in any event, the underlying company records on which the Court relies in reaching its decision on summary judgment, as more fully discussed below, could be provided in an admissible form at trial, such as via the business records exception to the hearsay rule. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (At summary judgment, "a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial[.]"). *See also* Federal Rules of Evidence, Rule 803(6); *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991) (A qualified witness for purposes of Rule 803 "is broadly interpreted to require only that the witness understand the record-keeping system."). Accordingly, all of Plaintiff's objections are **OVERRULED**.

### B. Waiver and Estoppel

Turning to the parties' substantive arguments on summary judgment, Plaintiff argues that Defendant is precluded from arguing the PSE exclusion based on waiver and estoppel because AmGUARD failed to inspect the Property before the Loss, paid Plaintiff a $50,000 advance for the damages with no reservation of rights, and continued to insure the Property despite knowing of the sprinkler issue. Plaintiff, however, offers no further explanation as to how these circumstances necessarily establish his waiver and estoppel claims. *See Gaunt*

---

[5] The underlying company records would also be admissible at trial under the business records exception to the hearsay rule. *See* Federal Rules of Evidence, Rule 803(6); *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991) (A qualified witness for purposes of Rule 803 "is broadly interpreted to require only that the witness understand the record-keeping system.");

*v. Prudential Ins. Co. of Am.*, 62 Cal. Rptr. 624, 627 (Cal. Ct. App. 1967) ("It is fundamental that the burden of proving estoppel or waiver rests upon the party in whose favor those doctrines are claimed to inure."). Tellingly, he devotes just three sentences in his opposition brief to these claims, one containing an inaccurate statement of law and two containing the aforementioned conclusory statements.

As Defendant points out, under California law,[6] "[t]he rules governing the application of the doctrines of estoppel and waiver in the context of insurance coverage are well established." *Dollinger DeAnza Assocs. v. Chicago Title Ins. Co.*, 131 Cal. Rptr. 3d 596, 611 (Cal. Ct. App. 2011). And instructive here, "[i]t is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained." *Id.* (collecting cases). In other words, "the principles of estoppel and implied waiver cannot operate to create insurance coverage where none exists under the plain terms of the operative policy." *Udinsky v. State Farm Fire & Cas. Co.*, No. 18-CV-03994-JSC, 2019 WL 1017606, at *11 (N.D. Cal. Mar. 4, 2019). Despite being on notice of case law contrary to his waiver and estoppel claims, Plaintiff made no attempt to distinguish or otherwise address it.

The only authority Plaintiff cited in support of his position is *Garamendi v. Golden Eagle Ins. Co.*, 10 Cal. Rptr. 3d 724 (Cal. Ct. App. 2004). He fails, however, to explain why the case is applicable or provide even a pinpoint page citation to the portion of the decision that supports his claim. In any event, the Court's review of the case reveals it is inapposite because, unlike this case, *Garamendi* involves a liability insurer, and "only liability insurers are subject to an exception" to the rule that estoppel and waiver principles do not apply in the insurance context. *Dollinger DeAnza Assocs.*, 131 Cal. Rptr. 3d at 612. The same exception does not apply here, and Plaintiff made no effort to show otherwise.

---

[6] There is no dispute that California law applies to Plaintiff's insurance contract and related claims.

Moreover, Defendant had no duty to inspect the Property prior to the Loss, the issuance of a partial payment that an insured is otherwise not entitled to under the insurance policy does not constitute a waiver, and Defendant had no obligation to cancel the Policy after denying coverage. *See Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 157 Cal. Rptr. 3d 385, 394 (Cal. Ct. App. 2013) ("[A]n insurer does not have the duty to investigate the insured's statements made in an insurance application and to verify the accuracy of the representations. . . Rather, it is the insured's duty to divulge fully all he or she knows."); *Udinsky v. State Farm Fire & Cas. Co.*, No. 18-CV-03994-JSC, 2019 WL 1017606, at *9 (N.D. Cal. Mar. 4, 2019) (claims adjuster's granting of partial payment to plaintiff based on a mistaken assumption "does not constitute a waiver"). Plaintiff's conclusory assertion that these facts establish waiver and estoppel is not enough to defeat summary judgment. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (noting that a plaintiff cannot prevail against a summary judgment motion "with unsupported conjecture or conclusory statements").

Accordingly, because Plaintiff has not presented adequate authority or evidence to substantiate his waiver and estoppel claims, he has not carried his burden to prove waiver or estoppel. *See Gaunt*, 62 Cal. Rptr. at 627.

### C. PSE Exclusion

As previously mentioned, Defendant argues that Plaintiff's breach of contract and related claims fail because pursuant to the PSE, coverage under the Policy is conditioned upon the maintenance of an operational automatic sprinkler system, and the Property was not equipped with such a system. Plaintiff counters that the phrase, "automatic sprinkler system," is ambiguous because it can reasonably include an Ansul System, which the Property had at the time of the Loss, and thus, Defendant wrongfully denied coverage.

Insurance policies are contracts, and contract interpretation is a question of law. *See Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995). A court's interpretation of a contract "must give effect to the mutual intention of the parties" at the time of formation. *Id.* If possible, such intent must be inferred "solely from the written provisions of the

contract." *Id.* "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Id.* A policy provision is ambiguous "when it is capable of two or more constructions, both of which are reasonable." *Id.* Language in a contract, however, "must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Id.* "Courts will not strain to create an ambiguity where none exists." *Id.*

Additionally relevant here, a condition precedent "refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties." *American Way Cellular, Inc. v. Travelers Property Cas. Co. of America*, 157 Cal. Rptr. 3d 385, 396 (Cal. Ct. App. 2013). "Conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." *Id.*

According to the PSE, as a condition to obtaining coverage, Plaintiff was required to maintain within the Property at the time of the Loss, the protective safeguard listed in the Schedule as "P-1." (Doc. No. 43-1 at 57.) That provision is defined in the PSE, in pertinent part, as:

> **"P-1" Automatic Sprinkler System**, including related supervisory services.
> Automatic Sprinkler System means:
>   a. Any automatic fire protective or extinguishing system, including connected:
>     (1) Sprinklers and discharge nozzles;
>     (2) Ducts, pipes, valves and fittings;
>     (3) Tanks, their component parts and supports; and
>     (4) Pumps and private fire protection mains.

(*Id.* (emphasis in original).) Plaintiff contends that at the time of the Loss, the Property had an Ansul System, and such a system can be reasonably interpreted as a P-1 automatic sprinkler system because it is an automatic fire extinguishing system that includes ducts. The Court disagrees.

8

21-cv-01983-AJB-DEB

  Notably, Plaintiff's interpretation would render redundant another provision in the PSE—namely, P-9G which is expressly defined as an "Automatic Commercial Cooking Extinguishing System (a/k/a Ansul system)". (*Id.* at 58.) Because the two types of systems are differentiated in the endorsement as separate categories with distinct identifying symbols (P-1 and P-9G), and the PSE at issue identifies only P-1 as the applicable safeguard, the Court finds that the contract, interpreted as a whole and in the circumstances of the case, does not support an interpretation of P-1 that includes an Ansul System. Adopting Plaintiff's interpretation would render meaningless the P-9G category. Under established contract principles, the Court declines to apply an interpretation that would create this result. *See AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1268 (Cal. 1990) ("It is a very fundamental principle that policy language be so construed as to give effect to every term."); *Union Oil Co. v. Int'l Ins. Co.*, 44 Cal. Rptr. 2d 4, 7 (Cal. Ct. App. 1995) ("an interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless").

  Moreover, the Court observes that the PSE, as a whole, lists five categories of safeguards, each of which contain different items and definitions. P-1 covers automatic sprinkler systems, P-2 covers automatic fire alarms, P-3 covers security service, P-4 covers service contracts with private fire departments, and P-9G covers automatic commercial cooking extinguishing systems "(a/k/a Ansul System)". (Doc. No. 43-1 at 57–58.) The Court finds that this differentiated grouping further supports a finding that each category is considered a distinct system not to be conflated with the other. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.") Because the express terms of the PSE required Plaintiff to maintain a P-1, not a P-9G safeguard, and each are considered separate and distinct systems under the contract, the Court does not find it reasonable for Plaintiff to expect that he satisfied his obligation to maintain a P-1 system by maintaining a P-9G system.

Plaintiff ignores that his interpretation would render another provision in the PSE a mere surplusage, and instead, points to his expert's opinion that P-1's definition for automatic sprinkler system is vague and ambiguous, as well as Defendant's expert's understanding of a sprinkler system. (Doc. Nos. 50 at 11–12; 50-1 at 2–3.) An expert's testimony, however, cannot be used to provide legal meaning or interpret a policy as written. *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (deeming irrelevant an expert's "legal conclusions as to what conditions were covered or excluded under the terms of the policy"). Plaintiff's arguments in this regard are therefore without merit.

Based on the foregoing, the Court finds that the P-1 Automatic Sprinkler System definition in the PSE is unambiguous in that it cannot be reasonably interpreted to include the Ansul System explicitly defined in another provision. Because an Ansul System does not satisfy Plaintiff's obligation to maintain an automatic sprinkler system within the meaning of P-1, Defendant correctly denied his request for coverage for failure to satisfy the condition precedent. Accordingly, the Court grants Defendant's summary judgment motion on this basis.

## IV. CONCLUSION

For the reasons stated herein, Defendant is entitled to summary judgment on Plaintiff's claims for breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory relief. Accordingly, Defendant's motion for summary judgment is **GRANTED**. [7]

Lastly, the Court notes that Berskshire Hathaway Guard Insurance Companies ("Berkshire") presently remains a defendant in this case. AmGUARD's pleadings indicate that Plaintiff erroneously sued Berkshire in this action. Plaintiff does not dispute this.

---

[7] The Court acknowledges Defendant's request for judicial notice of Exhibits 16, 17, and 18 in support of its summary judgment motion. (Doc. No. 43-3.) Because the Court reached its summary judgment ruling without reliance on these documents, however, the Court need not consider the request and denies it as moot.

There being no appearance from Berkshire and no dispute that such defendant was included erroneously, Berkshire is **DISMISSED WITHOUT PREJUDICE** from this action.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: March 18, 2024

Hon. Anthony J. Battaglia
United States District Judge